NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT LEE ROBINSON, | Civil Action No. 11-252 (JAP) |
| Plaintiff, | |
| v. | **OPINION** |
| SGT. RICHARD ANDREWS, et al., | |
| Defendants. | |

PISANO, District Judge:

This matter comes before the Court upon a motion for summary judgment [ECF No. 71] filed by Defendants Sgt. Richard Andrews ("Sergeant Andrews") and Officer Michael R. Gavin ("Officer Gavin") (collectively, "Defendants" or "the officers") on Pro Se Plaintiff Vincent Lee Robinson's ("Plaintiff's" or "Robinson's"), excessive force claims against them. Plaintiff has opposed the motion, and has cross-moved to stay [ECF No. 86] the Court's resolution of Defendants' summary judgment motion. The Court decides the matter without oral argument pursuant to Federal Rules of Civil Procedure 78. For the reasons explained herein, the Court grants in part and denies in part Defendants' motion and denies Plaintiff's cross-motion.

## I.    BACKGROUND

Robinson brings an excessive force claim against both defendants based upon altercations that took place during his arrest at the Atlantic City Boardwalk ("the boardwalk") on October 26, 2010. In short, he alleged in his complaint that he was "beaten and abused" by two arresting officers and that, "once [he] was handcuffed," he was "abused further by [the] police officers." Compl., ECF No. 1 at 4. Both Plaintiff and the Defendants agree that there were two pre-

handcuffing altercations between Robinson and them, but their accounts of the incidents diverge. For ease of reference, the Court will section the parties' respective accounts into three parts:  an initial altercation with Officer Gavin, an altercation on the beach with Officer Gavin and Sergeant Andrews, and Officer Gavin's post-handcuffing uses of force.  As Robinson ultimately pled to aggravated assault of one of the officers, the Court will briefly recount the facts surrounding the plea as well.

In detailing the pertinent facts, the Court will draw from Robinson's plea and deposition testimony, and Officer Gavin's and Sergeant Andrew's respective police reports.  The defendants did not provide the Court with their own deposition testimony, if there is any.

A.     *The Initial Altercation*

It is undisputed that, on October 26, 2010, Officer Gavin was investigating a civilian complaint that a male had threatened two people on the boardwalk with a knife a few days prior. According to Robinson's deposition testimony, he was walking around the boardwalk area that day and heard a set of footsteps behind him.  Robinson Dep. dated June 24, 2013, ECF No. 74 at 44:7-45:14.

In his deposition, Robinson maintained that he was approached by Officer Gavin and that, once he disclosed that he was carrying a knife, the officer threatened to shoot him, before kicking him:

> Well, when [Officer Gavin] approached me, he put his right hand on my right shoulder and he took my right wrist in his left hand and started  to put it behind me. He said, Do you have any weapons on you that I need to know about?  At that time I pointed to my back pocket and I said I have a knife in my back pocket  It was at that moment that the officer freaked out.  He spun me around, kicked me in my lower abdomen.  He and I both went backwards. And I - he said get your goddamn hands up, I'll shoot you. And I told him I don't- I did -I held my hands up like this, like I was surrendering, and I said that the knife is not in my hands.  And,

2

you know, and then I asked him why are you arresting me? And then I turn around and began to head towards the stairs on the east side of the patio.

*Id.* at 49:10-25.

Robinson further testified, in his deposition, that, before he reached the stairs, Officer Gavin grabbed him by the shoulder but was not able to gain control of him. *Id.* at 53:13-54:2. So, the officer kicked him again. *Id.* at 54:3-12. Robinson "tumbled" down the stairs, landing with his hands out in front of him, and then ran down the boardwalk. *Id.* at 55:17-56:11. Officer Gavin gave chase, and told Robinson that "he was going to shoot [him] if it was the last thing he did." *Id.* 56:12-20.

Contrary to Robinson's account, Officer Gavin states in his supplemental police report that Robinson reached for his knife and thrusted it toward him in their initial encounter.

> . . . As I was walking out to find the best area, I observed a male standing near the wall overlooking the walk. As I got closer, male turned and I could positively identify him as the suspect. Without time to call for backup, I grabbed his right arm and told him he was under arrest. *Male immediately yelled "I have a knife" and with his uncontrolled left hand, reached behind his waist and began coming out with a silver object, thrusting it in my direction.* I immediately kicked [him] away from me to create some distance, and pulled my gun, however [he] began running and I chose not to shoot because I could observe other people in the vicinity. I began to pursue him.

Atlantic City Police Rep. dated 10/27/10, ECF No. 77 at 29 (emphasis added). He, further, disputes that he kicked Robinson down the stairs and contends, instead, that Robinson fell during his attempt to flee. *Id.* Officer Gavin states in his report that he did not follow Robinson at that time, choosing to "wait[ ] for additional units to arrive." *Id.*

B.      *The Altercation on the Beach*

Robinson testified in his deposition that, following his initial altercation with Officer Gavin, he ran under the boardwalk and hid there until later in the evening; he exited from under the boardwalk to the beach when he overheard voices from the boardwalk stating that the police had left the area. *Id.* at 56:25-58:3, 60:3-14. Robinson further testified that the following events took place.

A few minutes after he re-emerged, Robinson walked up to the Taj Mahal casino and encountered Sergeant Richard Andrews, who was dressed in plain clothes. *Id.* at 60:15-61:4. The sergeant asked him who he was, and Robinson gave a fictitious name in response. *Id.* at 63:1-4. Office Gavin then stepped into the conversation and Sergeant Andrews asked the officer if he recognized Robinson. *Id.* at 63:16-22. After "looking at [Robinson] for a second," Officer Gavin, who was also dressed in plain clothes, "stepped back and pulled out a gun." *Id.* at 63:22-64:2. Upon sight of the gun, and hearing Officer Gavin say "that's him," Robinson ran back to the beach. *Id.* at 65:7-15.

According to Robinson, he did not recognize the officer as Officer Gavin at that time, and he did not realize that the officer or the sergeant were police officers. *Id.* at 64:7-11. Robinson "assumed [he] was being robbed or targeted for some act of violence of some sort" by the plain clothes officer and sergeant. *Id.* at 65:20-23.

Before Robinson made it to the stairs on the beach, he was "jumped from behind" by Sergeant Andrews. *Id.* at 65:24-66:8. Robinson fell face down in the sand, the sergeant rolled him over "punched [Robinson] in his . . . groin . . . about six times," and pinned down Robinson's right hand. *Id.*at 66:17-67:13. Officer Gavin then joined in, pushing Robinson's left hand into the sand and stomped on his "upper chest" and "lower throat area" with his foot. *Id.* at

68:7-23.  Robinson was "able to get his right hand free" in order to move Officer Gavin's boot from around his neck area; according to Robinson, he was "essentially choking to death" from the boot being placed there.  *Id.* at 69:17-20.  Robinson continued to resist because he still did not realize the officer and sergeant were police officers.  *Id.* at 70:18-71:7.  At that point in time, uniformed police officers began arriving on the scene.  *Id.* at 71:22-6.  These officers "brought [him] under control," by rolling him on his side and handcuffing him.  *Id.* at 72:12-20.

Both Officer Gavin and Sergeant Andrews dispute key aspects of Robinson's version of events.  By way of background, Gavin stated in his supplemental police report that, while Robinson was hiding under the boardwalk, he learned that Robinson was wanted in Maine for aggravated sexual assault of a 10 year old.  Atlantic City Police Rep. dated 10/27/10, ECF No. 77 at 30.[1]  Officer Gavin and other officers who had arrived at the scene then set up surveillance; some officers, including him, were in plain clothes while others were uniformed.  *Id.*  Officer Gavin observed a suspicious male reappear on the boardwalk and, upon approaching him, positively identified him as Robinson, stating to Andrews "that's him."  *Id.*

According to Gavin, Robinson took flight as soon as he heard those words, and reached for his knife.  Specifically, Gavin contends that Robinson "reach[ed] towards his rear waistband, where he had pulled the knife from . . . earlier.  Andrews tackled the male who began violently resisting arrest at one time striking Andrews on the head with his arm."  *Id.* at 31.  *See also* Atlantic City Police Rep. dated 10/26/10, ECF No. 77 at 22 (stating, in initial police report, that "After positively identifying him, male again attempted to flee, when he was tackled by Sergeant Andrews.  While resisting this arrest male again reached behind his waist and continued

---

[1]    In his report, Gavin explains that he learned this from Robinson's female companion who initially identified herself as "Rose Greenwood," and was later confirmed to be Francine White. *Id.*

physically resisting. During this confrontation suspect elbowed Sergeant Andrews in the head.")

Officer Gavin, further, explains that he kicked Robinson while he was on the ground in order to prevent him from accessing the knife:

> With Andrews directly on top of him, [Robinson] began to again reach towards his back refusing to give up his arms. Fearing he would once again produce the knife and able to cut either Andrews or myself, I kicked [him] several times in the shoulder and head area. Officers Corson, Wenz and Russell arrived and we were able to handcuff [him]. After standing [him] up, we observed a silver folding knife directly beneath him. This appeared to be the knife that he used on me earlier.

*Id.*

Sergeant Andrews similarly describes the confrontation, Robinson's reaching into his waistband, and how Robinson came to strike him:

> Once the male heard ["that's him"], he turned around taking flight back on to the beach. Officer Gavin and I chased the male. I was able to tackle the male *who was reaching into his waistband as he fled. While on the ground the male violently resisted, striking me in the side of the head with his elbow.* Officer Gavin and I attempted to subdue this male for some time before arriving Officers were able to assist in handcuffing the accused.

Atlantic City Police Rep. dated 10/26/10, ECF No. 77 at 25 (emphasis added).

### C.   *Post-handcuffing Use of Force*

Lastly, Robinson asserts that Officer Gavin used force against him after he had been handcuffed.  Robinson states in his deposition that, once he was handcuffed, Officer Gavin repeatedly kicked him in the face, rendering him unconscious for an unspecified period of time. Robinson Dep. dated June 24, 2013, ECF No. 74 at 73:12-74:5; *id.* at 81:5-7.  Thereafter, he states in his deposition, unnamed officers transported him to the boardwalk to search his person, where Officer Gavin kicked him again.  *Id.* at 74:6-75:6.  According to Robinson, it was at this

6

place and time that the officers found a small pocket knife in his pocket.  *Id.* at 75:7-16.[2]  Neither Officer Gavin nor Sergeant Andrews address the alleged post-handcuffing use of force in their police reports and, as noted above, they have not provided the Court with any deposition testimony.

D.      *The Plea*

Following his arrest, Plaintiff was subsequently charged in New Jersey state court with third-degree aggravated assault pursuant to N.J.S.A. 2C:12-1b(2), for attempting to cause bodily harm to Officer Gavin, and fourth-degree aggravated assault pursuant to N.J.S.A. 2C:12-1b(5), for attempting to cause bodily harm to Officer Gavin and Sergeant Andrews, among other charges.  *See* Indictment No. 10-12-2767B dated Dec 7, 2010, ECF No. 72-1 at 3, 4.[3]  On January 3, 2013, Plaintiff pled guilty only to the third-degree aggravated assault charge stemming from his altercation with Office Gavin.  *See generally* Transcript of Plea dated Jan. 3, 2013, ECF No. 72-3; *id.* at 2:9-3:4, 5:1-3.  All other charges brought against him were dismissed.

At the plea hearing, Plaintiff acknowledged that was in an altercation with Officer Gavin on October 26th.  He specifically stated that he fled from the officer, and that, when he was caught, he resisted arrest.  *Id.* at 8:9-25.  Noticeably, he acknowledged that he struck the officer,

---

[2]      Robinson also states in his deposition that, after he was placed in the back of a patrol car, an officer "put[ ] his right hand on the back of [Robinson's] head — and he bashed [Robinson's] face into the Plexiglas several times."  *Id.* at 80:5-13.  He does not state, however, that either of the defendants in this action committed this act.  Accordingly, the Court will not consider this assertion in its analysis.

[3]      The Court notes that Defendants have provided a copy of what appears to be the *second* indictment against Robinson—not the first—because the copy attached as Exhibit A to Defendants' motion is titled Indictment No. 10-12-2767*B*.  *Id.* (emphasis added).  This distinction is noteworthy because the plea transcript indicates that Robinson pled guilty "to the first count of . . . 10-12-2767, [which is] the *older* indictment."  Transcript of Plea dated Jan. 3, 2013, ECF No. 72-3 at 4:23-5:3.  Nevertheless, because the plea transcript makes clear that Robinson pled to a third-degree charge of aggravated assault resulting from his altercation with Officer Gavin, the Court need not rely on the indictment in its analysis.

and that Officer Gavin "was in uniform …."  *Id.* at 9:1-8; 9:3-5.  The judge found these admissions to comprise a sufficient factual predicate for the third-degree aggravated assault charge.  *Id.* at 9:11-18 ("I find . . .that he has, in fact, committed the third degree crime of aggravated assault.")

## II.    DISCUSSION

### A.    *Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case.  Fed.R.Civ.P. 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Facts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322–23)).

### B.    *Section 1983 and Fourth Amendment Law*

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  To succeed on a section 1983 claim, a plaintiff must demonstrate "the

violation of a right secured by the Constitution and laws of the United States," and "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *see also Robinson v. Temple Univ. Health Servs.*, 506 F. App'x 112, 114 (3d Cir. 2012).

All "claims that law enforcement officers have used excessive force ... in the course of an arrest," as here, "should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). The Fourth Amendment reasonableness test is "'whether, under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Graham*, 490 U.S. at 397). The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene ...." *Id.*

C.    *Plaintiff's Cross-Motion to Stay*

At the outset, the Court addresses Plaintiff's cross-motion to stay the Court's resolution of Defendants' summary judgment motion and, apparently, to strike portions of Defendants' summary judgment papers.  In Plaintiff's view, Defendants inappropriately attached copies of an uncharged indictment to their moving papers, which referenced criminal charges that were never lodged against him.  Defendants note, in response, that the attached documents are matters of public record, and that attachment of the documents does not provide any legal basis for staying the Court's disposition of the pending summary judgment motion.  Indeed, Plaintiff has not cited

any legal basis for staying this action.  Moreover, the Court need not rely on the uncharged indictment to render its ruling, thus, Plaintiff's motion to stay is denied.[4]

D.      *Defendants' Motion for Summary Judgment*

Turning now to Defendants' summary judgment motion, Defendants' primary argument is that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Defendants further argue that record evidence does not demonstrate that Plaintiff's excessive force claims satisfy the fourth amendment "objective reasonableness" test.  Lastly, Defendants contend that they are entitled to qualified immunity.   The Court addresses each argument in turn.[5]

1.      Heck Bar

*Heck* bars plaintiffs from bringing fourth amendment excessive force claims where a "judgment in favor of [the] plaintiff . . . would necessarily imply the invalidity of a prior criminal conviction …." *Lora-Pena v. FBI*, 529 F.3d 503 (3d Cir. 2008) (quoting *Heck*, 512 U.S. at 484-87).  In Defendants' view, Plaintiff's guilty plea to aggravated assault should trigger *Heck*'s bar here, and preclude Plaintiff from bringing his excessive force claims against both officers.

This Court addressed this precise issue recently in *Grande v. Keansburg Borough*, Civil Action No. 12–1968(JAP), 2013 WL 2933794, at *5 (D.N.J. Jun. 13, 2013).  In that case, this

---

[4]      The Court further notes that it has reviewed Plaintiff's letter request for complaint forms that he may use to file "'Three individual complaints' concerning the unethical conduct of Two District Court Judges as well as The Clerk of the U.S. District Court."  ECF No. 91.  This Court has no jurisdiction to consider ethical complaints against District Judges or the Clerk of Court, accordingly, no complaint forms will be provided to Plaintiff.

[5]      The Court further notes Defendants' request that the Court strike Plaintiff's opposition for being submitted late; however, the Court declines to do so in light of Plaintiff's pro se status.  Moreover, Plaintiff's opposition does not alter the Court's analysis.  The Court further notes that Plaintiff referenced, in passing, a request for the appointment of counsel in his opposition papers.  To the extent that Plaintiff seeks the appointment of counsel, he must make a written request addressing the factors set forth in *Tabron v. Grace*, 6 F.3d 147 (1993).

Court held that, when a plaintiff has been convicted of aggravated assault in New Jersey, *Heck* may bar that plaintiff's excessive force claim:

> Under New Jersey law, the elements of aggravated assault on a police officer are "(1) the defendant attempted to cause bodily injury to a law enforcement officer acting in performance of his duties while in uniform or exhibiting evidence of his authority; and (2) the defendant knew that the victim was a law enforcement officer acting in performance of his duties, while in uniform or exhibiting evidence of his authority." Self-defense is a defense to a charge of assault in the context of "fighting back during an arrest" if "the person arrested uses no greater force than that employed by the officer." In other words, "to be guilty of assault, the person being arrested must 'use[ ] an amount of force greater than the amount of force used by an officer allegedly using excessive force." Id. Thus, an aggravated assault conviction is "fatally at odds with [a] ... Fourth Amendment claim" for excessive force. Thus, in cases where there is an aggravated assault conviction, the *Heck* doctrine applies to bar the excessive force claim.

*Id.* at *5 (internal citations omitted).

This Court further noted, in *Grande*, that there are exceptions to this rule, namely, that *Heck* will not bar an excessive force claim based on the officer's use of force after the suspect has been subdued.  *Id.* ("Heck does not bar a plaintiff's excessive force claim against the arresting officer, even when that plaintiff has pled guilty to, or was convicted of assault .... [where] the officer applies excessive force when plaintiff has already been subdued.") (internal quotation marks and citation omitted).  The rationale underlying this exception is that "the officer's force may be excessive because the plaintiff is no longer a threat to the officer's safety." *Id.* (internal quotation marks and citation omitted).

While Defendants' rely heavily on *Grande* in their motion papers, *Grande* is not helpful to them in this case.  As an initial matter, Defendants fail to recognize that Robinson pled solely to the aggravated assault claim stemming from his altercation with Officer Gavin—he did *not* plead to any conduct relating to his altercation with Sergeant Andrews.  Thus, at best, *Heck*

would operate to bar Plaintiff's excessive force claim against Officer Gavin.  But his claim against Officer Gavin is not fully barred by *Heck* for another reason.  As *Grande* notes, *Heck* does not bar an excessive force claim stemming from an instance of excessive force that takes place after the suspect is subdued.  *See Grande*, 2013 WL 2933794, at *5.  Here, Robinson asserts in his deposition that, *after* he was handcuffed and subdued, Officer Gavin repeatedly kicked him in the face.  *See* Robinson Dep. dated June 24, 2013, ECF No. 74 at 73:12-74:5; *id.* at 74:6-75:6.; *id.* at 81:5-7.

Therefore, *Heck* does not bar Plaintiff's excessive force claims *in toto*.  As for Sergeant Andrews, the excessive force claim against him is not affected by *Heck* since Plaintiff did not plead to an aggravated assault charge relating to his altercation with the sergeant.  Hence the sergeant is not entitled to summary judgment on *Heck* grounds.  Summary judgment is granted, in part, however, on the claim against Officer Gavin, to the extent that Robinson's claim against him is based on the officer's pre-handcuffing conduct.

In connection with their *Heck* argument, Defendants further suggest that Robinson's complaint allegations are undermined by his plea to aggravate assault.  Specifically, Defendants state that Plaintiff failed to acknowledge in his complaint that he struck Officer Gavin, or any officer for that matter, and that the inconsistency between his complaint allegations and plea testimony is troublesome.

That Plaintiff was silent about his own aggressive actions in the complaint is not inconsistent with his plea testimony that he struck Officer Gavin while resisting arrest; the Court declines to construe his silence as an affirmative statement that he did not strike an officer.  More to the point, any silence in the complaint about his own resistive conduct is not contradictory to his deposition testimony that Officer Gavin kicked him in the face several times after he was

subdued.  Indeed, as in his deposition, Plaintiff alleged in his complaint that after the officers "placed [his] hands behind [his] back into hand cuffs," he was "kicked [ ] in the face several times until [he] passed out."  Compl., ECF. No. 1-1 at 2.  Therefore, Defendants' argument does not alter the Court's *Heck* analysis, and summary judgment is granted only in part on *Heck* grounds, as described above.

2.     "Objective Reasonableness"

As noted, for Plaintiff to withstand summary judgment on his excessive force claims, he "must show that a 'seizure' occurred and that it was unreasonable."  *Abraham*, 183 F.3d at 288. Defendants do not dispute that a seizure occurred, but argue that, even viewing the evidence in the light most favorable to Robinson, the record evidence fails to establish that the officers' actions were objectively unreasonable.  In determining whether the force used was objectively reasonable, the Court must pay careful attention to the pertinent facts and circumstances, including: the severity of the crime at stake, whether the suspect posed an immediate threat to the officers' safety, and whether the individual actively resisted arrest or attempted to evade arrest by flight.  *See Graham*, 490 U.S. at 396.  In weighing these factors, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . [because] police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation."  *Id.* (citation omitted).

Because the Court has found that *Heck* limits Plaintiff's claim against Officer Gavin to his post-handcuffing conduct, the following discussion will applies only to that aspect of the claim against Officer Gavin, along with the claim against Sergeant Andrews.  Defendants hinge their argument on the following facts, which they contend are undisputed.  Prior to their

altercations with Robinson, Defendants viewed Robinson as armed and dangerous.  Robinson

fled and struggled with them, and Robinson struck Officer Gavin, as he acknowledged in his plea

acceptance.  In addition, Robinson reached for his waist band to pull out a knife.  Once Robinson

reappeared from beneath the boardwalk, he fled from both officer and struggled with Sergeant

Andrews, striking him with his elbow.  According to Defendants, these facts demonstrate that the

officers' conduct was objectively reasonable under the circumstances.

    This restatement of the facts is not completely undisputed, however.  To be clear,

Robinson has not pointed to evidence that would create a genuine issue of fact regarding the

officers' perception that he was armed and dangerous.  Robinson has also acknowledged that he

fled, resisted arrest, and "accidentally" struck the sergeant.  Yet, there remains a genuine issue of

fact as to whether Robinson reached for the knife during the initial altercation with Officer Gavin

and/or during the altercation on the beach with both officers.[6]  The genuine issue of fact is

created by Robinson's deposition testimony that he disclosed to Officer Gavin that he was

carrying a knife, that the officer threatened to shoot him, and that the officer then kicked him

down a flight of stairs.  *See* Robinson Dep. dated June 24, 2013, ECF No. 74 at 49:10-25.

Robinson has also created a genuine issue of fact with respect to whether he reached for his knife

during the struggle with the sergeant.  *See id.* at 65:24-72:20 (describing altercation with

Sergeant Andrews and use of force by Officer Gavin).  In addition, there are other factual

disputes regarding whether Plaintiff fell down the stairs or was kicked down them by Officer

Gavin, whether Officer Gavin stomped him on his chest while he was pinned down by Sergeant

---

[6]    Although the Court has granted summary judgment to Officer Gavin on his pre-handcuffing conduct, based on the *Heck* bar created by Robinson's guilty plea to aggravated assault, the Court may still consider Plaintiff's deposition testimony regarding the initial altercation with Officer Gavin as it relates to the reasonableness of Sergeant Andrew's use of force.

Andrews, and whether he was kicked by Officer Gavin after he was subdued.  *See id.*

Resolving all factual disputes in Plaintiff's favor, as this Court must on summary judgment, the relevant facts are that the officers believed Robinson was armed and dangerous, and that Robinson resisted and fled and struck Officer Gavin (as Robinson admitted in his plea). In response, according to Robinson's deposition testimony, Officer Gavin kicked him in the face, repeatedly, after he was subdued.  *Id.* at 73:12-74:5; *id.* at 81:5-7.  Further, Sergeant Andrews punched him repeatedly in the groin area and forcibly held down his hands while pinning him in the sand.  *Id.* at 66:17-67:13.

The question, then, is whether *these facts* could demonstrate that the officers' actions were objectively unreasonable.  The Court concludes that a reasonable jury faced with these facts could find that Officer Gavin's post-handcuffing conduct was unreasonable.  Robinson asserts that the officer kicked him after he was already subdued, handcuffed and unable to pose any threat to the officers' safety.  Even assuming Officer Gavin believed that Robinson might be carrying a gun, based on the citizen complaint from a few days prior, there was no objective, rational basis for the officer to assume that he or his fellow officers were still in danger once Robinson was subdued.

Courts have denied summary judgment in such instances, and summary judgment is likewise not appropriate here for the officer's post-handcuffing conduct.  *See, e.g., Suarez v. City of Bayonne*, 566 F. App'x 181 (3d Cir. 2014) (reversing grant of summary judgment where plaintiff testified that he was handcuffed and hit by officers); *Hare v. Woodhead*, Civil Action No. 08–5894 (FLW), 2011 WL 1748469 (D.N.J. May 6, 2011) (denying summary judgment where issue of fact remained as to whether officer kicked and punched plaintiff after he was handcuffed).  For example, in *Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006), the Court of

Appeals for the Third Circuit held that "the participation of so many officers and the use of mace, several guns pointed at [plaintiff's] head, and handcuffs constituted excessive force against a cooperative and unarmed subject" where "[t]here was no evidence that [plaintiff] was resisting arrest or attempting to flee." *Id.* at 497. This same reasoning applies in this case.

Conversely, Sergeant Andrews is entitled to summary judgment on the claim against him. While Robinson testified that Andrews punched him repeatedly in the groin area, it is important to note that Robinson's own deposition testimony establishes that he continued to actively resist the sergeant while he was pinned to the sand, believing that he was being attacked. Robinson Dep. June 24, 2013, ECF No. 74 at 66:17-71:7. *See id.* at 69:17-20 (stating that he "was able to get [his] right hand free from the officer …."). According to Robinson, it was not until after other officers arrived to assist Sergeant Andrews that Robinson was actually restrained and subdued. *Id.* at 71:22-72:20. Thus, this is not a case in which a suspect was punched in the groin while he was no longer resisting and did not pose a threat to the officers. *Compare Johnson v. District of Columbia*, 528 F.3d 969, 974-75 (D.C. Cir. 2008) (concluding that repeated kicks to groin area constituted excessive force even where suspect initially resisted arrest but was restrained at the time kicks were delivered); *Kilmartin v. Schaffer*, No. 9:12–CV–1167, 2013 WL 5929447 (N.D.N.Y. Nov. 1, 2013) (denying summary judgment where plaintiff alleged that he was kicked in groin "without provocation" and there was no evidence that the plaintiff had resisted arrest). Accordingly, Plaintiff's own testimony supports a finding that Sergeant Andrews acted with objective reasonableness, and the sergeant is entitled to summary judgment on the excessive force claim against him. *See, e.g., Feldman v. Community Coll. of Allegheny*, 85 F. App'x 821 (3d Cir. 2004) (holding that wrestling plaintiff to the ground and kicking him in the head during the course of an arrest was objectively reasonable, in light of plaintiff's

resistance to arrest and active struggle with the officers); *cf. Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (affirming grant of summary judgment on eighth amendment excessive force claim where plaintiff asserted that officer put him in a headlock and punched him while he resisted arrest and scuffled with the officer).

3.   Qualified Immunity

Lastly, Defendants argue that they are entitled to qualified immunity.  A police officer is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  *See also Reichle v. Howards*, ––– U.S. ––––, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012).  The qualified immunity analysis is two-pronged, considering "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

All that remains of Plaintiff's claims is that aspect directed at Officer Gavin's post-handcuffing conduct.  Officer Gavin is not entitled to qualified immunity because there is a genuine issue of material fact as to whether he kicked Robinson in the face after he was subdued,[7] and in October 2010, it was clearly established that using force against a subdued arrestee amounts to a constitutional violation.  *Accord Marshall v. Keansburg Burough*, Civil Action No. 13–0533 (JAP), 2013 WL 6095475, at *7 (D.N.J. Nov. 20, 2013) (collecting cases); *Hurt v. City of Atlantic City*, No. 08–3053, 2010 U.S. Dist. LEXIS 16383, at *25–26, 2010 WL

---

[7]   As explained in *Giles v. Kearney*, 571 F.3d 318, 327 n. 4 (3d Cir. 2009), denying summary judgment on qualified immunity grounds is appropriate in an excessive force case where "the disputed facts are material to the qualified immunity analysis."  Here, as in *Giles*, the "question of whether [the plaintiff] was . . . subdued . . . makes a difference as to whether a reasonable official would have considered the force used reasonable and necessary under the circumstances." *Id.*

703193 (D.N.J. Feb. 24, 2010) (concluding that, in 2006, a reasonable officer would have known it to be unconstitutional to beat a plaintiff whom no longer posed a safety risk to the officers). While Officer Gavin contends that he did not kick Plaintiff once he was handcuffed, the Court must view the facts in the light most favorable to Plaintiff.  Accordingly, Officer Gavin's request for summary judgment on his post-handcuffing conduct, on qualified immunity grounds, is denied.

## III. CONCLUSION

For the reasons above, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's cross-motion to stay is denied.  An appropriate Order will follow.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  September 18, 2014